856 P.2d 99

Donald **LLOYD**, as the Personal Representative of the Estate of Clarence J. Swank, Plaintiff–Respondent,

v.

Gary A. **DeMOTT**, Defendant–Appellant.

and

Thomas and Marjorie **Carter**, husband and wife; Idaho First National Bank of Caldwell (Escrow Department); Interstate Funding, Ltd., a Nevada corporation and its agent, National Mortgage Company of Boise, Idaho; Terrace Lakes Recreational Ranch, Inc., an Idaho corporation; First Equivest, Inc., an Idaho corporation, Defendants.

No. 19847.

Court of Appeals of Idaho.

June 2, 1993.

Rehearing Denied July 16, 1993.

Vernon K. Smith, Boise, for defendant-appellant.

Charles D. Coulter, Boise, for plaintiff-respondent.

SILAK, Acting Judge.

Gary A. DeMott appeals from a judgment in favor of Donald Lloyd, as Personal Representative of the Estate of Clarence J. Swank (Swank). Swank brought suit to enforce a purchase agreement wherein DeMott bought ninety-four shares of stock in Terrace Lakes Recreation Ranch, Inc., (Terrace Lakes) plus Swank's rights to receive payments from a prior sales agreement between Swank and Thomas and Marjorie Carter (Carter). A jury found an amendment to the purchase agreement constituted an accord that had not been satisfied by DeMott, and judgment was entered for Swank. DeMott argues: (1) that the district court erred by limiting the issue for trial to accord and satisfaction; (2) that the district court erred by denying his motion for summary judgment; (3) that the court erred by not admitting evidence offered by DeMott in support of his theory of the case; and (4) that the court erroneously instructed the jury. DeMott and Swank each request attorney's fees on appeal. For the reasons stated below we affirm the judgment and award attorney's fees and costs to Swank.

## FACTS AND PROCEEDINGS

In September 1980, Clarence Swank entered into a purchase agreement with the Carters (Carter Agreement). By this agreement the Carters were to purchase, for $65,000, Swank's interest in Terrace Lakes which was evidenced by sixty-nine shares of stock, consisting of sixty-five shares of Charter stock and four shares of Class A stock. The agreement called for a $3,000 down payment and for the Carters to make yearly payments of $3,100, with the balance due in September of 1995.

On September 13, 1985, Swank entered into a purchase agreement with DeMott (DeMott/Swank Agreement) which conveyed to DeMott Swank's interest in the Carter Agreement and, additionally, ninety-four shares of Charter stock in Terrace Lakes. The DeMott/Swank Agreement stated the purchase price of $62,000, with biannual payments of $2,000 and $3,100 until September 1995, when the balance

was due. Additional terms included a default clause, attorney's fees clause, and a non-assignment clause. Swank also executed an assignment of the Carter Agreement in favor of DeMott (Carter Assignment).

In November 1986, contrary to the non-assignment clause, DeMott executed an assignment of his rights in the Carter Agreement to Interstate Funding Ltd. On March 16, 1987, Swank and DeMott entered into an amendment (the Amendment) to the DeMott/Swank Agreement, which reads as follows:

1. That for and in consideration of the sum of TWELVE THOUSAND AND NO/100 ($12,000.00), in certified funds, in hand paid by the Buyer, Seller hereby transfers to Buyer all of Seller's rights, title and interest to the· sixty-five (65) shares of Charter corporate stock in Terrace Lake Recreation Ranch, Inc., an Idaho corporation, and four (4) shares of Class A stock of Terrace Lakes Recreation Ranch, Inc., an Idaho corporation.

2. Seller accepts the payment of $12,000.00, in addition to the payments heretofore made, in full satisfaction of Buyer's obligations under the Purchase Agreement of September 13, 1985, and hereby releases Buyer from any and all claims arising under that agreement.

Sometime prior to the Amendment DeMott had fallen into default on the DeMott/Swank Agreement. Clarence Swank died in September of 1987, and in February 1988, after the court appointed Donald Lloyd (Lloyd) as personal representative, Swank filed suit against DeMott based on DeMott's breach of the purchase agreement because of the assignment to Interstate Funding, and DeMott's failure to make payment under the DeMott/Swank Agreement and the Amendment. DeMott moved for summary judgment on the basis that he had already paid the $12,000 required by the Amendment. In a memorandum decision the court denied DeMott's motion, finding that there remained disputed issues of material fact concerning whether the $12,000 had in fact been paid. The court informed the parties that the sole

issue for trial was whether DeMott's obligation was discharged under a theory of accord and satisfaction. In January 1992, a jury trial was held and the jury returned a verdict in favor of Swank. On March 11, 1992, the court amended the judgment in favor of Swank to include costs and attorney's fees. DeMott timely filed an appeal from the judgment and the award of attorney's fees.

## ANALYSIS

### 1. *Limiting Issues.*

■ The standard for reviewing a court's decision to limit the issues for trial after a conference with the parties is abuse of discretion. In reviewing for an abuse of discretion an appellate court will conduct a multi-tiered inquiry. The sequence of our inquiry is:

(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with any legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Sun Valley Shopping Ctr. v. Idaho Power,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

A trial court may simplify the issues for trial under I.R.C.P. 16(c) and 16(d)(1). The limiting of issues for trial can be ordered by the court after a conference and that order "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." As DeMott argues, the court may expedite justice, but "it must always do substantial justice." *Stevenson v. Steele,* 93 Idaho 4, 453 P.2d 819 (1969). DeMott asserts that the court never addressed the issue of the legal significance of the Carter Assignment and thereby failed to do substantial justice. This argument is misplaced.

The record shows that the court had all of the documents before it at the first pretrial conference on August 22, 1989. The minutes of the conference show that the

parties discussed the narrowing of issues. The subsequent order filed September 1, 1989, reveals that the court allowed De-Mott time to file a summary judgment motion on the sole issue of whether there had been an accord and satisfaction.

The court's Memorandum Decision denying the summary judgment motion shows that the court was aware of the issues and arguments that DeMott presents again to this Court. The court specifically noted the DeMott/Swank Agreement's provision that any default would require DeMott to return the sixty-nine shares of stock and that there had been a concurrent assignment to DeMott of the Carter Agreement. The court then noted that the Amendment to the DeMott/Swank Agreement purported to transfer all of Swank's interests in the sixty-nine shares to DeMott for a payment of $12,000. As the district court found DeMott's version of the facts to be "inherently incredible," we too find that we cannot reconcile his argument that the sixty-nine shares were assigned to him by the Carter Assignment unconditionally, that is, without any obligation on his part to pay for them, and the fact that the Amendment purports to release the same sixty-nine shares, supposedly conveyed unconditionally, for a subsequent payment of $12,000. Therefore, we hold that the court did not abuse its discretion in limiting the issue for trial to whether the Amendment was an accord and whether there had been satisfaction.

### 2. *Summary Judgment.*

█ The standard for reviewing a district court's ruling on a motion for summary judgment is free review, however this Court is bound by the same standards that control the district court's decision. *East Lizard Butte Water Corp. v. Howell,* 122 Idaho 679, 681, 837 P.2d 805, 807 (1992).

DeMott moved for summary judgment with accompanying affidavit and documents on September 14, 1989. Briefs were submitted and on May 17, 1990 the court heard oral argument. On May 22, 1990 the court issued its findings and conclusions and denied DeMott's motion for summary judgment. DeMott, in his argument to this Court, claims that the trial court erroneously denied summary judgment without considering the Carter Assignment as an unconditional assignment of the Carter Agreement. DeMott also claims as error the trial court's purported failure to rule on a motion for partial summary judgment.

After a complete review of the record, we affirm the district court's denial of De-Mott's motion for summary judgment. De-Mott knew from prior conferences with the court that the only issue that was to be presented in the summary judgment motion was that of accord and satisfaction. The district court's findings and conclusions are supported by the record and the law. De-Mott also fails to present any argument in his brief as to how the district court erred in its ruling on the motion for summary judgment; rather, he merely reiterates his argument that the dispositive issue in the case is whether the Carter Assignment was a complete unconditional conveyance of Swank's rights under the Carter Agreement. Without an argument as to why the district court was in error we affirm. In addition, we find from the record that the district court did rule on DeMott's motion for partial summary judgment and accordingly we find no error in any alleged failure to act on the motion.

### 3. *Admission of Evidence*

█ A trial court has broad discretion in the admission of evidence at trial and its decision will be reversed only when there has been a clear abuse of discretion. *Baker v. Shavers, Inc.,* 117 Idaho 696, 698, 791 P.2d 1275, 1277 (1990); *State v. Smith,* 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990). In exercising its discretion, the trial court must first determine whether the evidence is relevant, and then whether its probative value outweighs its prejudicial effect. *State v. Beason,* 95 Idaho 267, 278, 506 P.2d 1340, 1351 (1973); *Needs v. Hebener,* 118 Idaho 438, 444, 797 P.2d 146, 152 (Ct. App.1990); I.R.E. 402, 403.

█ DeMott attempted to cross examine Lloyd, the personal representative, concerning whether he had conveyed any inter-

est he had in the estate, in hope that the court would admit into evidence a copy of an assignment by Lloyd of his interest in Swank's estate. However, Swank objected and the court, after extensive argument, sustained the objection. DeMott claims this was error because Lloyd's credibility was at issue and the assignment would show bias and self-interest. The court ruled that DeMott's argument the evidence would show bias and self-interest was not persuasive, because if Lloyd had divested himself of any personal interest in Swank's estate it would undermine the purported bias of Lloyd. In addition, the court determined that the business dealings of Lloyd, in his own capacity, were not relevant to the accord and satisfaction of the DeMott/Swank Agreement and any relevance "would be outweighed under Rule 403 by confusing the issues, misleading the jury, delay, [and] waste of time." We agree with the district court's reasoning and find that DeMott has failed to show that the decision not to allow the evidence was an abuse of discretion.

### 4. Jury Instruction.

In reviewing a district court's decision to give a particular jury instruction our "standard of review is one of free review." *State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992) (citing *State v. Roll*, 118 Idaho 936, 938, 801 P.2d 1287, 1289 (Ct.App.1990)). Free review requires us to determine whether the jury was properly and adequately instructed and "ascertain whether the instructions, when considered as a whole, fairly and adequately present the issues and state the applicable law. Reversible error only occurs when an instruction misleads the jury or prejudices a party." *Manning v. Twin Falls Clinic & Hospital*, 122 Idaho 47, 50–51, 830 P.2d 1185, 1188–89 (1992) (citations omitted).

At trial DeMott objected to Jury Instruction Number Eight and argued that the instruction would confuse the jury concerning the real issue in the case—the meaning of the Carter Assignment. Swank argued, in support of the instruction, that changing the issue from accord and satisfaction to the meaning of the Carter Assignment

would confuse the jury. DeMott now argues that the court, before trial, erred by restricting or eliminating the relevant issue as to the validity and effect of the Carter Assignment, but once the evidence came in during trial and the Carter Assignment was among the documents of record, the court had the duty to instruct the jury as to the meaning, validity, genuineness and legal effect of the Carter Assignment on ownership of the sixty-nine shares.

In overruling DeMott's objection, the court summarized the history of the case and the evidence presented. The court found that to adopt DeMott's position would mean that DeMott had obtained the contract right to receive $65,000 from the Carter/Swank Agreement for absolutely nothing and that this view could not be reconciled with the fact that the Amendment purported to release the same sixty-nine shares, supposedly held unconditionally, for DeMott's payment to Swank of $12,000. Again, after a complete review of the record, we agree with the district court. DeMott's proposed instruction would have confused the jury and in light of all the instructions and procedural history of this case we hold that the district court did not err by overruling DeMott's objection to instruction number eight.

### 5. Attorney's Fees.

Both parties claim that they are entitled to attorney's fees and costs. Both parties argue that the other side's position is frivolous and without merit. However, we need not address that issue as the DeMott/Swank Agreement provides for the award of fees and costs to the prevailing party. We find, for the reasons stated above, that the Estate of Clarence Swank is the prevailing party and is entitled to reasonable attorney's fees and costs pursuant to the DeMott/Swank Agreement.

### CONCLUSION

DeMott has failed to show any error in the rulings of the district court. Therefore, on all of the issues raised by DeMott,

we affirm and award fees and costs to Swank.

SWANSTROM, J., and McQUADE, J. Pro Tem, concur.